IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANTHONY FORSYTHE, ST.,

    Plaintiff,

v.

THE BOROUGH OF EAST
WASHINGTON, and ROBERT
CALDWELL,

    Defendants.

10cv1770
**ELECTRONICALLY FILED**

## MEMORANDUM OPINION

Before the Court in this civil rights lawsuit is Defendants' Motion to Dismiss filed on behalf of Borough of East Washington and Robert Caldwell. Plaintiff's Complaint contends that Defendants violated his First, Fourth, and Fourteenth Amendment rights under 42 U.S.C. § 1983. See doc. no. 1, ¶¶ 30-55. Plaintiff also asserted a state law claim for malicious prosecution and for intentional infliction of emotional distress. Id., ¶¶ 56-70.

Defendants filed this Motion to Dismiss suggesting that all claims asserted against them should be dismissed. For the reasons set forth in greater detail below, the Court will grant in part and deny in part Defendants' Motion to Dismiss.

### I. Standard of Review

In considering a Rule 12(b)(6) motion, federal courts require notice pleading, as opposed to the heightened standard of fact pleading. Federal Rule of Civil Procedure 8(a)(2) requires only " 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.' "

Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

To survive a motion to dismiss, plaintiff must allege sufficient facts that, if accepted as true, state "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 at 570). A claim has facial plausibility when a plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant may be liable for the misconduct alleged. Id. at 1949. However, the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.' " Iqbal, 129 S.Ct. at 1950 (quoting Twombly, 550 U.S. at 555). In deciding a motion to dismiss, a court must determine whether the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." PA Prison Soc. v. Cortes, 622 F.3d 215, 233 (3d Cir. 2010), citing Iqbal, 129 S.Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009).

As explained succinctly by the United States Courts of Appeals for the Third Circuit:

> Pursuant to Ashcroft v. Iqbal, [citation omitted], district courts must conduct a two-part analysis when presented with a motion to dismiss. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009). "First, the factual and legal elements of a claim should be separated." Id. "The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Id. at 210-11. "Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' " Id. at 211 (quoting Iqbal, 129 S.Ct. at 1950).

Edwards v. A.H. Cornell and Son, Inc., 610 F.3d 217, 219 (3d Cir. 2010).

When determining whether a plaintiff has met the second part of the analysis and presented facts sufficient to show a "plausible claim for relief," the Court must consider the specific nature of the claim presented and the facts pled to substantiate that claim. For example,

in Fowler, a case predicated upon a violation of the Rehabilitation Act, the Court of Appeals determined that "[t]he complaint pleads how, when, and where [the defendant] allegedly discriminated against Fowler." 578 F.3d at 212. The Court, while noting that the Complaint was "not as rich with detail as some might prefer," it the "how, when and where" provided by the plaintiff sufficient grounds to establish plausibility. Id. at 211-212.

The Court of Appeals in Guirguis v. Movers Specialty Services, Inc., 346 Fed.Appx. 774, 776 (3d Cir. 2009), a civil rights and Title VII case, affirmed a decision to dismiss a plaintiff's complaint because the plaintiff failed to plead facts explaining why he believed his national origin was the basis for the termination of his employment .

Therefore, when deciding a motion to dismiss under Rule 12(b)(6), the district court should apply the following rules. The facts alleged in the complaint, but not the legal conclusions, must be taken as true and all reasonable inferences must be drawn in favor of plaintiff. Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 555. The Court may not dismiss a complaint merely because it appears unlikely or improbable that plaintiff can prove the facts alleged or will ultimately prevail on the merits. Id. at 556, 563 n.8. Instead, the Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. Id. at 556. In short, the motion to dismiss should not be granted if plaintiff alleges facts which could, if established at trial, entitle him to relief. Id. at 563 n.8. Generally speaking, a complaint that provides adequate facts to establish "how, when, where, and why" will survive a motion to dismiss. See Fowler and Guirguis, supra.

Based upon this standard, this Court has reviewed Defendants' Motion to Dismiss Plaintiff's Complaint.

## II. Factual Background

The allegations set forth below are accepted as true solely for the purposes of deciding Defendants' Motion to Dismiss.

On August 25, 2010, after 3 p.m., Plaintiff answered the door (presumably to his apartment) to Defendant Caldwell, at which time he was threatened by Defendant Caldwell with a taser, asked to turn around, was aggressively handcuffed in "too tight" a manner, and placed into a police vehicle. Doc. no. 1, ¶¶ 9, 15-16, 18-19. These events took place in front of Plaintiff's son, a minor.[1] Id. at ¶ 3. According to Plaintiff's Complaint, Defendant Caldwell left the minor child unattended from the time he placed Plaintiff into the police vehicle, and after transporting Defendant to the South Strabane Police Department. Id. at ¶¶ 22-24.

Plaintiff alleges that after he was brought to the police vehicle, Defendant Caldwell made several phone calls to other people to ask if "they had ever had any run-ins" with Plaintiff. Id. at ¶ 21. Plaintiff claims that while he was sitting in the police vehicle, he informed Defendant Caldwell that his minor child was unattended. Id. at ¶ 22. Presumably during and after being transported to police headquarters, Plaintiff requested that he be permitted to call his minor son, and Defendant Caldwell denied each of these requests. Id. at ¶ 25. Defendant Caldwell charged Plaintiff with disorderly conduct, drove him back to his apartment and released him. Id. at ¶ 26.

Plaintiff claims that as a result of this incident he: (1) endured physical pain to his hands and wrists from the aggressive handcuffing, and (2) sustained an aggravation to a pre-existing medical condition in the form of physical stomach pain stemming from the stress of having his minor son witness the incident and be left unattended. Id. at ¶¶ 23, 25.

---

1 Defendants' Brief in Support of their Motion to Dismiss notes that the minor child was fourteen years of age. Plaintiff's Complaint and his Brief in Opposition to the Motion to Dismiss makes no reference to the child's age, nor does it challenge or dispute the statement of the child's age made by Defendants.

## III. Discussion

### A. Plaintiff's Claims Against Defendant Borough

#### 1. Claims predicated upon a *respondeat superior* theory of liability

As noted by the United States Court of Appeals for the Third Circuit in <u>Beck v. City of Pittsburgh</u>:

> When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom. <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658 (1978). Thus, although the municipality may not be held liable for a constitutional tort under § 1983 on the theory of vicarious liability, it can be held responsible as an entity when the injury inflicted is permitted under its adopted policy or custom. <u>Id.</u> at 694.

89 F.3d 966, 971 (3d Cir. 1996).

Plaintiff's Complaint alleges that Defendant Caldwell was employed by Defendant Borough and was "an agent, official, officer and/or employee of" Defendant Borough. Doc. no. 1 at ¶ 4. The Complaint further states, "[t]he various acts and omissions alleged herein were engaged in and carried by Caldwell, acting as a representative of [Defendant Borough], which were acting by and through Caldwell as their employee and official pursuant to governmental custom, practice and/or policy . . . ." <u>Id.</u> at ¶ 7.

Defendants rely primarily on these assertions (and others of like kind, *i.e.*, ¶¶ 30, 49, and 51) to support its position that Plaintiff has only pled a *respondeat superior* theory of liability with respect to Defendant Borough. Plaintiff counters by claiming that paragraphs 3 and 40 provide facts, if proven, which would support a finding of independent liability on the part of Defendant Borough. See doc. no. 12, ¶ 2. Those paragraphs read as follows:

> 3. East Washington is vested with the management and administration of law enforcement in East Washington, by and through its agency, the East Washington Police Department, in which it is further vested with the

supervision and training of police officers so employed.

*   *   *

40. East Washington's failure to adequately train and supervise Caldwell caused Forsythe to be deprived of rights, privileges and/or immunities secured by the Constitution and laws of the United States.

Doc. no. 1 at ¶¶ 3, 40. These paragraphs fail to provide facts sufficient to support the legal conclusion that Defendant Borough may be individually liable; and to the contrary, simply allege a *respondeat superior* theory of liability. As noted by Defendants, recovery against the Defendant Borough under such a theory is not permissible.

Thus, any attempt by Plaintiff to recover against Defendant Borough under a theory of *respondeat superior* must be denied. Furthermore, any attempt to amend the Complaint would be futile since this form of recovery against a municipality such as Defendant Borough is not legally permissible. For this reason, the claims asserted by Defendant Borough, predicated upon a *respondeat superior* theory of liability, shall be dismissed with prejudice, as amending the Complaint would be futile.

### 2. Claims predicated upon failure to adequately train/supervise

In <u>Gilles v. Davis</u>, the Court of Appeals for the Third Circuit noted as follows:

> A supervising authority may be liable under § 1983 for failing to train police officers when the failure to train demonstrates deliberate indifference to the constitutional rights of those with whom the officers may come into contact, notwithstanding the qualified immunity of an officer at the scene. See <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989). But to establish liability on a failure to train claim under § 1983, plaintiffs "must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." <u>Reitz v. County of Bucks</u>, 125 F.3d 139, 145 (3d Cir. 1997).

<u>Gilles</u>, 427 F.3d 197, 207 n. 7. (3d Cir. 2005)

In the <u>Reitz</u> case, the Court of Appeals affirming summary judgment on behalf of the

6

municipal defendants commented on the difficulty of pleading (and proving) a Section 1983 claim against a municipality based on a "failure to train" claim as follows:

> Establishing municipal liability on a failure to train claim under § 1983 is difficult. A plaintiff pressing a § 1983 claim must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred. Colburn v. Upper Darby Township, 946 F.2d 1017, 1030 (3d Cir.1991). Recently, the Supreme Court reiterated the difficulty of this standard, noting in the context of an inadequate background screening case that a § 1983 "plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, ----, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997) (emphasis in original). When a plaintiff alleges that a municipality has not directly inflicted an injury, but has caused an employee to do so, stringent standards of culpability and causation must be applied to ensure that the municipality in a § 1983 suit is not held liable solely for the conduct of its employee. Id. at ---- - ----, 117 S.Ct. at 1388-89.

Reitz, 125 F.3d 139, 145 (3d Cir. 1997)

Turning to the instant case, the Complaint fails to provide any facts that even suggest that Defendant Borough was the "moving force" behind the actions Defendant Caldwell took on the day in question. Similarly, there are no facts which suggest that Defendant Borough failed to provide a specific type of training which has a causal nexus with Plaintiff's injuries and which further demonstrate that the absence of that specific training reflects a deliberate indifference to whether the alleged constitutional deprivations occurred.

In his Brief in Opposition to the Motion to Dismiss, Plaintiff asserts that his Complaint does provide the requisite facts. Specifically, he points to paragraph 21 where he alleges that that Defendant Caldwell made "several phone calls asking the people on the other end of the line if they had ever had any run-ins with [Plaintiff]." Doc. no. 1 at ¶ 21. In his Brief in Opposition, Plaintiff argues that "[i]f Caldwell was on the phone with his supervisor after he placed [Plaintiff] into his vehicle and was advised to continue his seizure, while a cause for the seizure

7

could be established, then clearly a claim would exist against the Borough." Doc. no. 13 at p. 10.

This argument fails for several reasons. First, the Complaint itself does not allege that Defendant Caldwell placed a call to a supervisor, nor does it allege that he was given any unconstitutional instruction by a supervisor. Second, even if the Complaint had so alleged, this is not the same as alleging that the municipality was the "moving force" behind the alleged unconstitutional activity – which per the Complaint, began to occur <u>prior</u> to any phone calls being made and continued thereafter – and providing facts which support that allegation. Third, even if the Complaint were amended to state that Defendant Caldwell called his superior officer after the initial violation of Plaintiff's rights occurred, this is not the same as alleging the Defendant Borough failed to provide Officer Caldwell with a specific type of training which has a causal nexus with Plaintiff's injuries and which reflects Defendant Borough's deliberate indifference as to whether the alleged constitutional deprivations occurred.

Thus, even if Plaintiff were permitted to amend his Complaint to allege the facts suggested by his Brief, his Complaint would still lack the requisite factual basis for asserting an independent cause of action against Defendant Borough.

Finally, despite argument in his Brief to the contrary (see doc. no. 13 at p.11), nowhere in his Complaint does Plaintiff allege that Defendant Borough had a "policy of permitting Caldwell to call-in and check-out detainees, post-seizure, to establish a cause to seize[,]" thereby independently violating Plaintiff's constitutional rights. Even if his Complaint had made such an assertion, once again, this does not establish how Defendant Borough was the "moving force" leading to Plaintiff's constitutional claims (which again, per the Complaint, began <u>prior</u> to any telephone calls), and/or what specific type of training the Borough failed to provide to Officer Caldwell.

Accordingly, Plaintiff's claims against Defendant Borough predicated upon a failure to train/supervise theory of liability are dismissed with prejudice because amending the Complaint would be futile.

**B. Plaintiff's Claims Against Defendant Caldwell**

**1. Plaintiff's First Amendment Claim**

The Complaint fails to allege with any clarity how Plaintiff's First Amendment rights were violated. According to Plaintiff's Brief in Opposition to the Motion to Dismiss, Plaintiff claims that the Complaint illustrates that he asked Defendant Caldwell why he was present at Plaintiff's apartment but Defendant Caldwell refused to answer his question and instead, threatened Plaintiff with a taser and handcuffed him. Doc. no. 13 at p. 10. Specifically, Plaintiff's Brief reads:

> Here it is axiomatic that when someone, anyone, even a police officer comes to your door, you have a right to inquire as to the circumstances of their presence. That mere inquiry cannot be envisioned by the undersigned to ever result in a disorderly conduct charge, or even a taser placed upon someone's person, but it occurred, or was pleaded in this case.

Id.

However, even with the "explanation" proffered by Plaintiff's Brief, the Complaint is utterly devoid of any inference that Plaintiff was charged with disorderly conduct as a result of his inquiry as to why Defendant Caldwell was present in his apartment on August 25, 2010 and/or was charged with disorderly conduct on August 25, 2010 as a means of suppressing Plaintiff's First Amendment rights to free speech.

Plaintiff's First Amendment claim cannot survive Defendants' Motion to Dismiss as it is currently pled in the Complaint. After reviewing that portion of Plaintiff's Brief in Opposition addressing the dismissal of his First Amendment claim, this Court has serious doubts that any factual allegations exist which could support such a claim. Nevertheless, due solely to the sheer

9

lack of clarity in both his Complaint and the Brief in Opposition, Plaintiff will be given an opportunity to amend his Complaint, if he so chooses, to better explain with factual assertions how Defendant Caldwell violated his First Amendment rights.

### 2. Plaintiff's Fourth Amendment Claim

Based upon the assertions in Plaintiff's Complaint, Plaintiff was at home when Defendant Caldwell came to his apartment and proceeded to engage him in such a way that Plaintiff was threatened by Defendant Caldwell with a taser, handcuffed, and removed from his home to a police station where he was charged with disorderly conduct.[2] Doc. no. 1, ¶¶ 9 -16, 18-19, 21, 24, 26.

In <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 269 (1973), the Supreme Court noted that searches and seizures "are an opaque area of the law" where "flagrant Fourth Amendment abuses will rarely escape detection" but actually establishing legal elements can be difficult.

Based upon the facts as pled by Plaintiff, accepted as true solely for the purposes of this Motion, Defendant Caldwell went to Plaintiff's apartment, knocked on his door, advised Plaintiff he needed to speak with him, then refused to explain why he was there, and instead, threatened Plaintiff with a taser and placed him in handcuffs. Doc. no. 1, ¶¶ 9-16, 18-19. These facts in a vacuum, if proven true, could support a flagrant Fourth Amendment violation. Thus, Plaintiff's Fourth Amendment claim against Defendant Caldwell will survive the Motion to Dismiss.

### 3. Plaintiff's Fourteenth Amendment Claims

Paraphrased, the Fourteenth Amendment states (in part) that no state shall deprive any person of liberty without due process of law. As pled, it appears that Plaintiff was a "person at liberty" at the time of the incident. As such, he only needs to prove elements of his Section 1983

---

[2] Again, what the charge of disorderly conduct was predicated upon is unclear from the factual allegations set forth in the Complaint.

claims pursuant to the Fourth Amendment's proscriptions against unreasonable searches and seizures in order to have a viable Fourteenth Amendment claim.

Again, due to the fact that this Court must accept as true all factual allegations in the Complaint, and because the Fourth Amendment claim as pled against Defendant Caldwell remains viable at this juncture of the proceedings, so must the Fourteenth Amendment claim.

### C. Plaintiff's State Law Claims Against Defendant Caldwell

Plaintiff also asserted a cause of action under Pennsylvania law for malicious prosecution and for intentional infliction of emotional distress. Again, due to the constraints placed upon this Court to accept as true all well-pleaded facts, this Court finds Plaintiff has adequately pled a cause of action for these two state-based torts.

### IV. Conclusion

Based on the foregoing, Defendants' Motion to Dismiss shall be granted, with prejudice, with respect to all claims against Defendant Borough. Defendants' Motion will be granted, without prejudice, as to Plaintiff's First Amendment Claim against Defendant Caldwell. Defendants' Motion will be denied in all other respects.

An appropriate Order of Court shall follow.

<u>s/ Arthur J. Schwab</u>
Arthur J. Schwab
United States District Judge

cc:     All Registered ECF Counsel and Parties